Steven A. Miller, WSBA #30388
Kellen A. Hade, WSBA # 44535
**Miller Nash Graham & Dunn LLP**
2801 Alaskan Way, Suite 300
Seattle, Washington 98121
Tel: (206) 624-8300
Email: steve.miller@millernash.com
          kellen.hade@millernash.com

Dale R. Cockrell, *pro hac vice*
**Moore, Cockrell, Goicoechea & Johnson, P.C.**
145 Commons Loop, Suite 200
Kalispell, MT 59901
Phone: 406.751.6003
Email: dcockrell@mcgalaw.com

Attorney for Defendant

Honorable Rosanna M. Peterson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| DOUGLAS TURNIDGE and JAMES HOUSEGO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GLACIER BANK d/b/a MOUNTAIN WEST BANK,<br><br>Defendant. | Case No. 2:20-cv-00303-RMP<br><br>GLACIER BANK'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY<br><br>December 11, 2020<br>Without Oral Argument |

## I.    **INTRODUCTION**

Defendant Glacier Bank moves the Court to compel arbitration of plaintiff Douglas Turnidge and James Housego's claims under the agreements governing their accounts. Plaintiffs' claims are contractually based: they allege that Glacier breached its account agreements by charging fees not authorized or disclosed for certain kinds of account overdrafts and certain kinds of Automated Teller Machine transactions. Glacier disagrees and contends that the fees are properly disclosed

Glacier Bank's Motion to Compel Arbitration- 1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1 and contractually binding on plaintiffs, and that plaintiffs' claims should be
2 dismissed.
3     But for now, the Court need not address the merits because the deposit
4 agreements require arbitration of "all disputes, controversies, or claims arising out
5 of, affecting, or relating to [their] deposit accounts with the Bank[. . . ], whether
6 such Claims are in contract, tort, statute, or otherwise."  Plaintiffs were offered the
7 opportunity to opt out of this arbitration provision—but they did not opt out.  The
8 arbitration clause is binding on them, and all the claims asserted in this lawsuit
9 against Glacier (that it breached the deposit agreement, violated its covenant of
10 good faith and fair dealing or was unjustly enriched) must be arbitrated.
11     Consistent with the strong federal policy in favor of enforcing arbitration
12 clauses, this Court should enforce the contract as written, including the arbitration
13 provision.  Glacier asks the Court to grant this motion, compel arbitration and
14 dismiss this case.

15              **II.     FACTUAL BACKGROUND**
16         A.     **Plaintiffs' Relationship with Glacier**
17     Glacier Bank is a community bank, headquartered in Kalispell, Montana.
18 Glacier operates separate divisions in various states where it conducts business,
19 and each bank division operates with its own management team in the
20 communities it serves.  Plaintiffs have each maintained accounts with the
21 Mountain West Bank division of Glacier Bank.  Declaration of Kelly Boone
22 ("Boone Decl.") ¶ 2.
23     Plaintiff Douglas Turnidge ("Turnidge") opened his deposit account with
24 Glacier in May 2017.  Boone Decl. ¶ 4 & Ex. A.  Turnidge alleges that he is a
25 resident of Spokane Valley, Washington (Compl. ¶ 5), and his account statements
26

Glacier Bank's Motion to Compel Arbitration- 2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

generally reflect usage of his account in the state of Washington.  Boone Decl., ¶ 14.

Plaintiff James Housego ("Housego") opened a deposit account in March 2019. Boone Decl. ¶ 5, Ex. B. Housego alleges that he is a resident of Coeur d'Alene, Idaho (Compl. ¶ 6), and his accounts statements generally reflect usage of his account in the state of Idaho before May 2020.  Boone Decl., ¶ 14.

Glacier's standard practice for its Mountain West Bank division when opening deposit accounts is to provide customers with copies of the applicable account agreements governing the parties' relationship and to get confirmation in writing that the customer received those agreements.  Boone Decl. ¶ 3.  Among these contractual documents are the account's Terms & Conditions ("Terms").  The Terms include an "Amendments and Termination" section that permits Glacier to amend the Terms with reasonable notice:

> **AMENDMENTS AND TERMINATION -** We may change any term of this agreement. [W]e will give you reasonable notice in writing or by any other method permitted by law. . . . You agree to keep us informed of your current address at all times.  Notice from us to any one of you is notice to all of you.  If we have notified you of a change in any term of your account and you continue to have your account after the effective date of the change, you have agreed to the new term(s).

Boone Decl., Ex. A p. 6.  The Terms also advise customers that they must promptly review account statements, and (again) must notify the bank of any change in address:

> **ADDRESS OR NAME CHANGES** - You are responsible for notifying us of any change in your address or your name. Unless we agree otherwise, change of address or name must be made in writing by at least one of the account holders. . . . [W]e will attempt to communicate with you only by use of the most recent address you have provided to us.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

Boone Decl., Ex. A p. 8.  The Terms contain no express choice of law provision.

Consistent with Glacier's account-opening practices, both Turnidge and Housego signed an Account Agreement stating that they had "personally and as, or on behalf of, the account owner(s) agree[d] to the terms of, and acknowledge[d] receipt of copy(ies) of," the Terms and other account documents.  Boone Decl., Exs. A & B.

### B.    The Arbitration Provision

In April 2020, Glacier amended the Terms to include an arbitration provision (the "Arbitration Provision").  The Arbitration Provision covers all claims arising between Glacier and account holders, no matter when those claims arose, reading:

> You and Glacier Bank (the "Bank") agree that we shall attempt to informally settle any and all disputes, controversies, or claims arising out of, affecting, or relating to your deposit accounts with the Bank (hereafter referred to as the "Claims"). If that cannot be done, then you agree that any and all Claims that are threatened, made, filed or initiated after the Effective Date (defined below) of this Arbitration and Waiver of Class Action provision ("Arbitration Provision"), even if the Claims arise out of, affect or relate to conduct that occurred prior to the Effective Date, shall, at the election of either you or us, be resolved by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its applicable rules and procedures for consumer disputes ("Rules"), whether such Claims are in contract, tort, statute, or otherwise.

Boone Decl., Ex. C p. 4.  Any customer who did not want to be bound by the Arbitration Provision could opt out of it:

Glacier Bank's Motion to Compel Arbitration- 4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

> **Right to Opt-Out.** You have the right to opt-out of this Arbitration Provision and it will not affect any other terms and conditions of your account agreement or your relationship with the Bank. To opt out, you must notify the Bank in writing of your intent to do so within 30 days after the Effective Date. . . . Your notice of intent to opt out can be a letter that is signed by you or an email sent by you that states "I elect to opt out of the Arbitration Provision" or any words to that effect.

Boone Decl. Ex. C p. 4.

Consistent with the Terms, Glacier provided notice that it was amending the deposit agreement to add the Arbitration Provision by mailing a copy of the notice with customers' monthly account statement to the address of record on the account:

*Housego:* Glacier mailed notice of the Arbitration Provision to Housego along with his April 2020 account statement at the address listed on his account. Boone Decl., Ex. D.

*Turnidge:* Glacier mailed Turnidge's February 2020 statement to the address listed on his account; that statement was not returned. Boone Decl. ¶ 9. The March 2020 statement that Glacier mailed to the same address was returned to bank as undeliverable. *Id.* Subsequently, Glacier attempted to contact Turnidge for a correct address. *Id.* Turnidge has not responded to attempts contact him. *Id.* Thus, Glacier could not mail the Arbitration Provision to Turnidge with his April 2020 account statement to the address listed on his account. Boone Decl., Ex. E. But on July 14, 2020, Turnidge through his attorneys, Johnson Becker, asked for a copy of his April, 2020 statement. Boone Decl. ¶ 9. On July 24, 2020, Glacier Bank provided Turnidge's attorneys with a copy of his April, 2020, along with the Arbitration Provision. *Id.* Turnidge has checked his account online since the Arbitration Provision was included with his April 20, 2020 statement and prior to

Glacier Bank's Motion to Compel Arbitration- 5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1  the July 14, 2020 request for the statement from his attorneys, Johnson Becker. *Id.*
2  Turnidge also could access his statements by visiting a Glacier branch. *Id.*
3        Both Housego and Turnidge have continued to use their Glacier accounts
4  after receiving notice of the Arbitration Provision. Boone Decl. ¶ 11. Neither has
5  opted out of the Arbitration Provision. Boone Decl. ¶ 12.

      **C.**    **Plaintiffs' Claims**

7        Turnidge and Housego allege here that Glacier had routinely charged "its
8  customers (a) overdraft fees…on transactions that did not overdraw their accounts;
9  and (b) out-of-network ATM Fees...despite Glacier not disclosing these fees in its
10 Fee Schedule and account documents, as required." Compl. ¶ 1. Turnidge and
11 Housego claim that these practices are "done in violation of the agreements
12 between Glacier and its customers." Compl. ¶ 3.
13       Before filing their Class Action Complaint and Demand for Jury Trial
14 ("Complaint") in this lawsuit, neither plaintiff made any attempt to informally
15 settle their disputes with Glacier. Boone Decl. ¶ 13. In a call between counsel for
16 Glacier and plaintiffs after the filing of this lawsuit, Glacier advised that it was
17 exercising its right to require arbitration of these disputes and requested dismissal
18 of the Complaint. At that time, Plaintiff's counsel indicated the wish to review a
19 motion to compel arbitration before making a decision about whether plaintiffs
20 would agree to arbitrate and therefore, would not dismiss the Complaint at that
21 time. Declaration of Kellen Hade ¶ 2.

### III.    ARGUMENT

23       The Federal Arbitration Act (the "FAA") mandates that "district courts
24 *shall* direct the parties to proceed to arbitration on issues as to which an arbitration
25 agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,
26 218, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985) (emphasis in original). As

Glacier Bank's Motion to Compel Arbitration- 6

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

this Court has held, "[t]he standard for demonstrating arbitrability is not high." *Am. Forest Holdings, LLC v. Bank of Am., NA*, No. CV-10-3044-RMP, 2011 WL 320911, at *1 (E.D. Wash. Jan. 28, 2011) (Peterson, J.). "Absent unmistakably clear language to the contrary, arbitration should be ordered unless it can be said that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

Therefore, the Court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* Both factors are satisfied by the Arbitration Provision in the Terms between Glacier and each of plaintiffs, and the Court should compel plaintiffs to arbitrate and dismiss—or in the alternative stay—this action.

### A.  The Arbitration Provision is Valid and Binding on Plaintiffs

#### 1.  The Court Should Apply Washington and Idaho Law

Under both Washington and Idaho law, the Arbitration Provision constitutes a valid agreement to arbitrate. Because the Terms do not have an express choice-of-law provision, the Court first should determine what law applies.

In determining whether a valid arbitration agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). "The Supreme Court of the State of Washington uses the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws (1971) for resolving choice-of-law disputes involving both contract claims . . . and tort claims." *Bybee Farms, LLC v.*

Glacier Bank's Motion to Compel Arbitration- 7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

*Snake River Sugar Co.*, 625 F. Supp. 2d 1073, 1078 (E.D. Wash. 2007) (internal citation omitted). The "significant relationship" test looks to factors including: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Mulcahy v. Farmers Ins. Co. of Washington*, 152 Wash. 2d 92, 101, 95 P.3d 313, 317 (2004).

Here, Turnidge is a resident of Washington and account records demonstrate the account was used primarily in Washington. On the other hand, Housego is or was a resident of Idaho and account records demonstrate the account was used primarily in Idaho. The Court should apply Washington state law as to Turnidge and Idaho law as to Housego.

### 2. The Arbitration Provision is Valid Under Both Idaho and Washington Law

"Washington follows the objective manifestation test for contracts." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945, 949 (2004). "Generally, manifestations of mutual assent will be expressed by an offer and acceptance." *Id*. at 178. Idaho applies a nearly identical rule. *See Justad v. Ward*, 147 Idaho 509, 512, 211 P.3d 118, 121 (2009) ("Formation of a valid contract requires a meeting of the minds as evidenced by a manifestation of mutual intent to contract . . . This manifestation takes the form of an offer followed by an acceptance.") (internal citation omitted).

In both Washington and Idaho, assent can be manifested expressly or through conduct. *See, e.g.*, *Discover Bank v. Ray*, 139 Wn. App. 723, 727, 162 P.3d 1131, 1133 (2007) ("the offeror may propose acceptance by conduct, and the

Glacier Bank's Motion to Compel Arbitration- 8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

buyer may accept by performing those acts proposed by the offeror."); *Fed. Nat. Mortg. Ass'n v. Hafer*, 158 Idaho 694, 702, 351 P.3d 622, 630 (2015) (same).

Here, Turnidge and Housego manifested assent to the Arbitration Provision in two ways. First, the Terms expressly confirm that changes in account terms are binding if a customer continues to use their account after account terms are changed: "If we have notified you of a change in any term of your account and you continue to have your account after the effective date of the change, you have agreed to the new term(s)." Turnidge and Housgo both continued to use their Glacier bank accounts after the effective date of the Arbitration Provision and therefore manifested their assent to it. *See Discover Bank*, 139 Wn. App. at 727 (finding assent where credit card member agreement expressly stated that use of credit card constituted an acceptance of the agreement); *Hafer*, 158 Idaho at 702 (finding assent offer stated that continued payments would constitute acceptance and borrower made additional payments).

Second, the Arbitration Provision itself provided Turnidge and Housgo with a chance to opt out of the provision and communicated that by not opting out, they agreed to the Arbitration Provision. By failing to opt out, Turnidge and Housego reinforced their assent to the Arbitration Provision. *Cf. Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (employee's failure to exercise opt-out of arbitration clause permitted inference of assent under California law).

Accordingly, the Court should hold that the Arbitration Provision constitutes a valid agreement to arbitrate under state law applicable to both Plaintiffs.

    3.    <u>Turnidge cannot avoid arbitration (or any other contractual amendment) by failing to keep his address current.</u>

Glacier expects Turnidge may argue that he did not receive actual notice of the Arbitration Provision and so it does not apply to him. But if Turnidge did not

Glacier Bank's Motion to Compel Arbitration- 9

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1  receive the notice in April, 2020, it is only because he never gave Glacier an
2  updated address—despite his repeated promises to do so.  But more importantly,
3  Turnidge did in fact receive notice of the Arbitration Provision. Turnidge's
4  attorneys contacted Glacier on July 14, 2020 specifically requested, among other
5  things, a copy of the April 2020. On July 24, 2020, Glacier provided a copy of
6  Turnidge's April, 2020 statement including the Arbitration Provision on July 24,
7  2020.  An attorney is the agent for a client.  *Haller v. Wallis,* 89 Wn.2d 539, 548
8  (1978).  "The attorney's knowledge is deemed to be the client's knowledge, when
9  the attorney acts on his behalf." *Id.; Lane v. Brown & Haley,* 81 Wn. App.102, 108
10 (1996); *Dixie Ins. Co. v. Mello,* 75 Wn. App.328, 339 (1994).  Even after receiving
11 a copy of the Arbitration Provision through his attorney, Turnidge failed to opt out.
12       Further, as detailed above, the Terms advise customers that they must tell
13 Glacier if their address of record has changed, both in a section titled "ADDRESS
14 OR NAME CHANGES" and in the section discussing amendments to the Terms:

> **AMENDMENTS AND TERMINATION -** We may change any term of this agreement. *[W]e will give you reasonable notice in writing or by any other method permitted by law. . . . You agree to keep us informed of your current address at all times*. Notice from us to any one of you is notice to all of you.  If we have notified you of a change in any term of your account and you continue to have your account after the effective date of the change, you have agreed to the new term(s).

21 Boone Decl., Ex. A p. 6. (emphasis added).
22       Parties may agree how to amend their contract.  Here, Turnidge agreed that
23 Glacier could amend the deposit agreement.  Turnidge has actual notice through
24 his attorneys, which received the Arbitration Provision on July 24, 2020. Boone
25 Decl. ¶ 9.  This result makes practical sense.  Otherwise a customer could prevent
26 Glacier from making any change to the deposit agreement simply by concealing

Glacier Bank's Motion to Compel Arbitration- 10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

his current address—even if the customer (or his attorney) knows about the amendment.

### B. The Arbitration Provision Encompasses Plaintiffs' Claims

"[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The Ninth Circuit has found that the contractual language 'all disputes arising under' must be construed liberally in arbitration clauses. . . . Disputes need only 'touch matters' covered by the contract." *Miller v. Nw. Tr. Servs., Inc.*, No. CV-05-5043-RHW, 2005 WL 1711131, at *4 (E.D. Wash. July 20, 2005) (*citing Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir.1999) (internal citation omitted)).

Here, the Arbitration Provision is even broader than the language considered by the Ninth Circuit. It encompasses "any and all disputes, controversies, or claims arising out of, affecting, or relating to your deposit accounts with the Bank." Boone Decl., Ex. C at p. 4. *See Allbaugh v. Perma-Bound,* No. C08-5713-JCC, 2009 WL 10676437, at *9 (W.D. Wash. Aug. 14, 2009) (finding language "arising out of or relating to" to be broader than "arising under").

All of Turnidge and Housego's claims arise out of, affect, and/or relate to their deposit accounts with Glacier. *See, e.g.* Compl. ¶¶ 1, 3. Each of Plaintiffs' three counts are predicated on the deposit account Terms, alleging Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and, in the alternative, Unjust Enrichment based on the theory that certain fees were not properly disclosed in the Terms. Compl. ¶¶ 72 – 96. These claims not only

Glacier Bank's Motion to Compel Arbitration- 11

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

"touch" matters governed by the Terms, they are based entirely upon the Terms. The Court should find that the Arbitration Provision applies to plaintiffs' claims.

Plaintiffs also cannot avoid the clear obligation to arbitrate simply because they allege that their claims accrued prior to the amendment of the Terms to include the Arbitration Provision. Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019). Thus, if an arbitration clause includes claims that pre-date the arbitration clause, then those claims are also within the scope of the arbitration clause. *Allbaugh* 2009 WL 10676437 at *9 (holding pre-existing claims within scope of arbitration provision where provision clearly included such claims); *see In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 406 (S.D.N.Y. 2003) (clause that included "all Claims now in existence or that may arise in the future" encompassed claims arising prior to the time the parties entered into arbitration agreement); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (arbitration provision that included "any dispute or claim" relating to agreement or other services provided by defendant encompassed pre-existing claims). Here, the Arbitration Provision expressly encompasses the claims even if they "arise out of, affect or relate to conduct that occurred prior to the Effective Date." Boone Decl., Ex. C at p. 4. Therefore, even those allegations that relate to disputed fees charged or incurred prior to April 2020 are included in the scope of the Arbitration Provision and must be arbitrated.

**C.     The Court Should Dismiss the Action or, in the Alternative, Stay**

Under the FAA, once the Court finds that an issue is referable to arbitration under the parties' agreement, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with

Glacier Bank's Motion to Compel Arbitration- 12

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

the terms of the agreement." 9 U.S.C. § 3. The Ninth Circuit has, however, affirmed a District Court's authority to dismiss an action where the "language contained in the arbitration provision is sufficiently broad to bar all of plaintiff's claims." *Veritas Constr., Inc. v. LBG 38, LLC*, No. C16-1811-JCC, 2017 WL 347476, at *1 (W.D. Wash. Jan. 24, 2017) (*quoting Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). As discussed above, all of Plaintiffs' claims arise out of or relate to their consumer banking accounts at Glacier. Accordingly, all those claims are subject to arbitration and the Court should compel arbitration and dismiss this action.

In the alternative, even if this Court declines to dismiss this action, the FAA requires that the Court stay this action pending the outcome of arbitration. 9 U.S.C. § 3.

### D. Glacier Preserves All Defenses Should the Court Deny the Motion to Compel Arbitration.

As noted above, Glacier disputes Plaintiffs' claims and believe they fail—if not on the pleadings, then on the merits. But it also believes those claims should be arbitrated and acknowledges the Ninth Circuit's caution that parties risk waiving their right to arbitrate by litigating in federal court. *See Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) ("[D]elay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate); *see also Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988) (holding that motion to dismiss waived right to arbitrate). For that reason, Glacier is not moving to dismiss these claims under FRCP 12(b) or other rule. Glacier reserves its right to raise those defenses if the Court does not compel arbitration.

Glacier Bank's Motion to Compel Arbitration- 13

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

## IV. CONCLUSION

All of Plaintiffs' claims fall squarely within the broad language of the valid and binding Arbitration Provision. Glacier asks the Court to enforce the parties' contract and compel Plaintiffs to submit their claims to arbitration and to dismiss this action.

DATED this 22nd day of October, 2020.

        MILLER NASH GRAHAM & DUNN LLP

        */s/ Kellen A. Hade*
        Steven A. Miller, WSB No. 30388
        steve.miller@millernash.com
        Kellen A. Hade, WSB No. 44535
        kellen.hade@millernash.com
        2801 Alaskan Way, Suite 300
        Seattle, WA 98121-1128
        Phone: 206.624.8300
        Fax: 206.340.9599

        MOORE, COCKRELL, GOICOECHEA & JOHNSON, P.C.

        */s/Dale R. Cockrell*
        Dale R. Cockrell, Montana Bar No. 4185
        dcockrell@mcgalaw.com
        145 Commons Loop, Suite 200
        Kalispell, MT 59901
        Phone: 406.751.6003

        *Attorneys for Defendant Glacier Bank*

Glacier Bank's Motion to Compel Arbitration- 14

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

# CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the Glacier Bank's Motion to Compel Arbitration with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered counsel and parties of record

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct to the best of my knowledge.

Signed this 22nd day of October, 2020 at Seattle, Washington.

*s/ Kellen A. Hade*
Kellen A. Hade

4817-1099-7199.4

Certificate of Service - 1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121